## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ORLANDO SANTANA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-04094 |
| | ) | |
| McDONOUGH COUNTY, | ) | |
| McDONOUGH COUNTY SHERIFF'S | ) | |
| DEPARTMENT, PETER MURFIN, | ) | |
| and PEGGY MAPPIN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the parties' cross-motions for summary judgment.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment (d/e 17) is DENIED and Defendants' Motion for Summary Judgment (d/e 18) is GRANTED IN PART and DENIED IN PART.

## I. FACTS

Plaintiff Orlando Santana was arrested for underage drinking in the early morning hours of February 29, 2020 and placed in a holding cell in the McDonough County Jail ("Jail") in Macomb,

Illinois.  Santana was twenty years old at the time.  The holding
cells of the Jail are subject to audio and video recording, and
several audio/video recordings of Santana's cell from the morning of
February 29, 2020 have been submitted into evidence. See d/e 17,
exh. B1–13, C.

The video footage of Santana's cell shows that, after 7:30 a.m.,
Santana began knocking on the steel door of his cell and saying,
"Excuse me."  After receiving no response from correctional officers,
Santana began banging on the steel door of his cell and shouting.
After correctional officers still did not respond, Santana shouted,
"I'm going to fucking kill myself, fuck this shit bro" and "I'm going to
hang myself."  D/e 18, p.3.  Santana walked towards the toilet in
his cell, stepped onto the toilet, and removed his shirt.  Defendant
Peter Murfin, a correctional officer on duty at the Jail, heard
Santana shout that he was going to kill himself and observed
Santana climb onto the toilet via a monitor displaying a video feed
of Santana's cell.  Murfin instructed Defendant Peggy Mappin, the
other correctional officer on duty, to get a suicide prevention smock
and follow him to Santana's cell.

Murfin then drew his taser, walked to Santana's cell, and opened the door. Murfin leveled his taser at Santana's chest and ordered Santana to remove all of Santana's clothing. As Murfin ordered Santana to undress, Mappin arrived outside the door and stood behind Murfin. Santana responded, "I will, I will," and "okay, here," and allowed Murfin to retrieve the shirt that Santana was holding in his hand and toss it out of the cell. However, Santana did not immediately remove the rest of his clothes. Instead, Santana argued with Murfin in a raised voice while Murfin repeatedly ordered him to remove his clothes. Due to the audio quality of the submitted recording, not all of Santana's words are clearly discernible, but at one point he can be heard responding to Murfin's order to undress by asking, "First, can I call my mom?" D/e 17, exh. C, at 2:30–2:31. After roughly forty seconds of argument, during which time Santana unbuttoned his pants and lowered them slightly but then pulled them back up, Santana took a step towards Murfin, at which point Murfin used one hand to push Santana back into the cell. Murfin then stepped into the cell,

still with his taser pointed at Santana's chest, and continued to order Santana to remove his clothes.

Santana re-buttoned his pants and continued to argue with Murfin.  Murfin then pushed Santana into one corner of the cell and warned Santana that Murfin would use the taser if Santana continued to refuse to comply.  While the two men argued, Mappin entered Santana's cell behind Murfin and unholstered her own taser.  When Santana continued to refuse to remove his clothes, Murfin stated, "I'm gonna tase you" and caused his taser to emit a spark.  Santana raised his hands in front of his chest but continued to argue with Murfin.  Murfin then stated, "I'm gonna tase you" two additional times and began slowly counting to three, stopping at "Two and a half."  Santana continued to argue with Murfin and made no move to comply.  Murfin then fired his taser into Santana's chest.  The taser's two barbed probes punctured Santana's skin and released an electrical shock into Santana's body, at which point Santana fell to the ground.

As Santana lay on the ground, Murfin removed all of Santana's clothing and then removed the probes from Santana's

skin.  After the probes were removed, Santana bled a small amount from the places where the probes had struck his skin.  Murfin and Mappin exited the cell, leaving the suicide smock inside with Santana.

Santana was released on bond at approximately 9:50 a.m., eight hours and twenty minutes after arriving at the Jail and a little over two hours after being tased.  Later that day, Santana visited the McDonough hospital, where he was examined and determined not to be in need of any treatment.  Santana eventually pled guilty to one count of consumption of alcohol by a minor in connection with the offense for which he had been arrested.  He was sentenced to six months of court supervision and was required to take a drug and alcohol class and to participate in twenty hours of community service.

On April 16, 2020, Santana filed a four-count Complaint (d/e 1) against Murfin, Mappin, McDonough County, and the McDonough County Sheriff's Department.  Count I, brought under 42 U.S.C. § 1983, alleges that Murfin violated Santana's Fourth Amendment rights by using excessive force against him, that

Mappin violated Santana's Fourth Amendment rights by failing to prevent Murfin from using excessive force, and that both Murfin and Mappin violated the Fourth Amendment by failing to provide medical assistance to Santana.  Count II alleges a state-law claim for willful and wanton conduct against the McDonough County Sheriff's Department (the "Department").  Count III alleges a state-law claim for battery against Murfin and the Department.  Count IV alleges that McDonough County is required to indemnify the other Defendants for any judgment entered against them.

Santana filed his Motion for Summary Judgment (d/e 17) on November 18, 2021.  Santana's Motion requests summary judgment in favor of Santana and against Murfin and Mappin on Count I and against the Department on Counts II and III.  All four Defendants jointly filed their cross-motion for summary judgment (d/e 18) on November 19, 2021.  Defendants argue that Murfin's use of a taser on Santana was reasonable under the circumstances, and in the alternative that Murfin is entitled to qualified immunity on Santana's excessive force claim.  Defendants also argue that they are entitled to summary judgment on Plaintiff's other claims if

Murfin's use of force was reasonable.  Each of the parties filed a Response (d/e 22, 23) to the opposing party's summary judgment motion on February 28, 2022 and a Reply (d/e 24, 25) in support of their own summary judgment motion on March 14, 2022.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  <u>Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.</u>, 986 F.3d 711, 718 (7th Cir. 2021). When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>King</u>

v. Hendricks Cty. Commissioners, 954 F.3d 981, 984 (7th Cir. 2020).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact.  See Celotex, 477 U.S. at 323.  After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (cleaned up).  Summary judgment is warranted when the moving party carries its initial burden, and the non-moving party cannot establish an essential element of its case on which it will bear the burden of proof at trial.  Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir. 2012).

Defendants have argued that Murfin is entitled to qualified immunity on Santana's excessive force claim.  Courts apply a two-part inquiry to determine whether a defendant is entitled to qualified immunity.  First, the court examines whether the plaintiff has presented evidence, taken in the light most favorable to the plaintiff, that would allow a reasonable fact finder to determine that the plaintiff was deprived of a constitutional right.  Sallenger v.

Oakes, 473 F.3d 731, 739 (7th Cir. 2007).  Second, the court examines whether the particular constitutional right was clearly established at the time of the alleged violation.  Id.  A court may, in its discretion, address the second prong of the test first.  Pearson v. Callahan, 555 U.S. 223, 242 (2009).

The plaintiff bears the burden of establishing the existence of a clearly established constitutional right.  Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993).  A plaintiff may do this by either pointing to a closely analogous case or showing that the conduct was so egregious that no reasonable officer would have thought he was acting lawfully.  Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008); Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 723-24 (7th Cir. 2013).  "Importantly, the right must be clearly established in a particularized sense, rather than in an abstract or general sense."  Abbott, 705 F.3d at 731.  In excessive force cases, "the result depends very much on the facts of each case," so officials are entitled to qualified immunity unless precedent "squarely governs" the case against them.  Mullenix v. Luna, 577 U.S. 7, 13 (2015) (quoting Brosseau v. Haugen, 543 U.S. 194, 201 (2004)).  While a

case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 12 (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011).

### III. ANALYSIS

### A.   Murfin Is Entitled to Qualified Immunity on Santana's Excessive Force Claim.

The central allegation in Santana's Complaint is that Murfin's use of a taser on Santana violated Santana's Fourth Amendment right to be free from unreasonable searches and seizures. Normally, § 1983 claims against correctional officers for the use of excessive force against pre-trial detainees are brought under the Fourteenth Amendment's Due Process Clause, but here the parties agree that Santana has properly alleged a violation of his Fourth Amendment rights because "the Fourth Amendment governs the period of confinement between arrest without a warrant and the [probable cause determination]." Currie v. Chhabra, 728 F.3d 626, 629 (7th Cir. 2013) (alteration in original); but see Forrest v. Prine, 620 F.3d 739, 743 (7th Cir. 2010) (discussing temporal limitations on Fourth Amendment right to be free from unreasonable searches and seizures and holding that Fourteenth Amendment applied to

claim that correctional officer used excessive force during the strip search of a pretrial detainee prior to probable cause determination). Regardless of whether Santana's claims should have been brought under the Fourth or Fourteenth Amendment, however, the same standard applies. "Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.'" Lombardo v. City of St. Louis, Missouri, 141 S. Ct. 2239, 2241 n.2 (2021) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).

Because Defendants have invoked qualified immunity, Santana must show, not only that the force used by Murfin was objectively unreasonable, but that its unreasonableness was clearly established as of February 29, 2020. Santana argues that this was the case because he was only "passively resisting" by refusing to comply with Murfin's orders, d/e 17, p. 14, and the use of a taser on a passively resisting individual has usually been found to violate clearly established law. See Abbott, 705 F.3d at 732.

Santana argues that "passive resistance includes failing to comply with a verbal command." D/e 17, p. 11. However, the Seventh Circuit cases Santana cites to support this proposition all involve plaintiffs who <u>merely</u> failed to comply with a command. In <u>Abbott v. Sangamon County, Illinois</u>, 705 F.3d 706 (7th Cir. 2013), police officers used a taser on the plaintiff twice, once while the plaintiff was running towards the officers and then again while the plaintiff was lying face-up on the ground and not responding to law enforcement demands to turn over. The Seventh Circuit found that the second shock violated clearly established law because the plaintiff was lying immobile when it was delivered. <u>Id.</u> at 730. In <u>Phillips v. Community Insurance Corp.</u>, 678 F.3d 513 (7th Cir. 2012), police ordered plaintiff to leave her parked car, but the plaintiff, who was intoxicated, refused to comply and instead lit a cigarette and lay down in the front seat. <u>Id.</u> at 525. Police shot the plaintiff four times in the legs with beanbag projectiles, seriously injuring her. The Seventh Circuit found that it was a "close question" whether officers acted reasonably by firing the first shot, but that it was clearly unlawful for police to shoot plaintiff three

additional times after she proved too drunk to react to the first shot
other than by yelling in pain.  Id. at 526.  In Becker v. Elfreich, 821
F.3d 920 (7th Cir. 2016), the plaintiff was attempting to surrender
to police with his hands above his head when the defendant set a
police dog on the plaintiff.  While plaintiff was subdued and fully
compliant, the defendant allowed his dog to cause serious injury to
the plaintiff by continuing to bite while the defendant finished
handcuffing the plaintiff.

     Unlike the plaintiffs in Abbott, Phillips, and Becker, Santana
was not lying immobile and unresponsive when the allegedly
unreasonable force was employed.  Instead, Santana was upright
and in motion and was shouting and raising his hands to ward off
the taser impact that Murfin had repeatedly warned was coming.
Moreover, Murfin deployed his taser only once, whereas the
defendant in Abbott deployed a second shock to his target's
unresponsive body and the defendants in Phillips and Becker
seriously injured their targets.  See Abbott, 705 F.3d at 726 (finding
that use of a taser is more than a de minimis application of force,
but "generally does not constitute as much force as so-called impact

weapons, such as baton launchers and beanbag projectiles").
Additionally, Murfin used his taser only after Santana threatened to
commit suicide and took actions consistent with an intent to
commit suicide.

A more similar Fourth Amendment excessive force case is
Brooks v. City of Aurora, Illinois, 653 F.3d 478 (7th Cir. 2011).  In
that case, police officers informed the plaintiff that he was under
arrest, and the plaintiff then backpedaled away, evaded the officer's
attempt to grab his wrist, and "threw out his arms in what could be
construed as a resisting or defensive posture."  Id. at 484.  The
police officer pepper sprayed the plaintiff twice and then arrested
him.  The Seventh Circuit, noting that "[p]rior cases have charted
only clearer waters," found that the officer was entitled to qualified
immunity because the illegality of "applying pepper spray to an
arrestee who has ceased active, physical resistance for a couple of
seconds but has not submitted to the officer's authority, has not
been taken into custody and still arguably could pose a threat of
flight or further resistance" was not clearly established.  Id. at 487.

Santana has not shown that the waters have cleared since Brooks was decided.  Granted, the plaintiff in Brooks actively evaded attempts by the police to physically restrain him and retreated towards his house, whereas Murfin never attempted to physically seize Santana and Santana was trapped in a small cell. On the other hand, however, Murfin gave Santana a number of chances to comply, argued with Santana for several minutes in an attempt to make him comply without resorting to the use of force, and repeatedly warned Santana that Murfin was about to deploy the taser if Santana did not comply.  The officer in Brooks gave no such warning and sprayed the plaintiff shortly after first informing him that he was under arrest.  Additionally, the officer in Brooks sprayed the plaintiff a second time after the plaintiff had already "ceased active, physical resistance for a couple of seconds."  Id. Murfin, by contrast, shocked Santana only once.  See Abbott, 705 F.3d at 726 (finding that the use of a taser is a similar application of force to the use of pepper spray, as both fall "somewhere in the middle of the nonlethal-force spectrum").

Factually similar excessive force cases from the Fourteenth
Amendment context confirm that Murfin's use of the taser did not
violate clearly established law.  In <u>Forrest v. Prine</u>, 620 F.3d 739
(7th Cir. 2010), a correctional officer instructed an intoxicated and
belligerent pretrial detainee to comply with the procedures for a
strip search, and, when the detainee refused to comply, employed a
taser on the detainee.  As in this case, the detainee was pacing in
his cell and arguing with officers in a raised voice prior to the officer
employing his taser.  And as in this case, the officer "warned [the
detainee] <u>several times</u> that noncompliance would result in tasing."
<u>Id.</u> at 745.  The Seventh Circuit found, not only that the officer's
use of force was constitutionally reasonable, but that the officer
acted "in a professional manner to accomplish a difficult task in a
dangerous situation."  <u>Id.</u> at 746.

In <u>Forrest</u>, the detainee was a violent felon who "shout[ed]
obscenities," clenched his fists, and was approximately the same
size as the officer who employed the taser.  <u>Id.</u> at 741–42.  Santana,
by contrast, was physically smaller than Murfin at 5'10" and 150
pounds to Murfin's 6'0" and 290 pounds.  While neither detainee

explicitly threatened violence, Santana's speech consisted mainly of requests for a phone call so that he could contact his mother, while the plaintiff in Forrest aggressively screamed obscenities at correctional officers.  Interpreting the facts in the light most favorable to Santana, it might be reasonable to distinguish Forrest because the correctional officer in Forrest, unlike Murfin, could reasonably have feared that his own safety would be in danger if he attempted to restrain the detainee without the use of a taser.  But in order to overcome qualified immunity, Santana must show that existing Seventh Circuit precedent placed the question of whether a law had been violated beyond debate.  In light of Brooks and Forrest, Santana cannot show that it was clearly established on February 29, 2020 that using a taser one time, after several warnings, on a possibly suicidal pretrial detainee who was moving around his cell, arguing in a raised voice, and raising his hands defensively violated clearly established law.  Accordingly, Murfin is entitled to qualified immunity on Santana's excessive force claim.

**B.  Defendants Are Entitled to Summary Judgment on Santana's Failure to Intervene and Failure to Provide Medical Care Claims.**

The Court's finding that Murfin's use of force did not violate clearly established law means that Mappin is entitled to qualified immunity on Santana's failure to intervene claim.  See Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (explaining that liability for failure to intervene under § 1983 requires that the non-intervening officer "had reason to know that a fellow officer was using excessive force or committing a constitutional violation").

Santana argues that Murfin and Mappin's failure to provide him with medical care after Murfin employed the taser was objectively unreasonable and violated Santana's Fourth Amendment Rights.  The Seventh Circuit has set forth four factors governing the determination of whether an officer's response to medical needs was objectively unreasonable: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." Ortiz v. City of Chicago, 656 F.3d 523, 530 (7th Cir. 2011).  "The

severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." <u>Williams v. Rodriguez</u>, 509 F.3d 392, 403 (7th Cir. 2007).

The only injuries Santana suffered were two minor puncture wounds where the taser's barbed probes struck his chest.  These wounds produced only "minimal" bleeding, and when Santana went to the hospital on the 29th he was told that his injuries did not require any treatment.  From this, the Court concludes that the injuries sustained by Santana were not objectively serious.  <u>See</u> <u>id.</u> at 401 ("A medical condition is deemed to be objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (cleaned up). Furthermore, Santana did not request medical attention at any point while he was detained in the Jail.  Having taken the four

factors laid out by the Seventh Circuit into account, the Court finds that Murfin and Mappin did not act in an objectively unreasonable manner by not providing medical care to Santana.

## C.     The Court Declines to Exercise Jurisdiction Over Santana's Remaining State Law Claims

"Although the decision is discretionary, '[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" RWJ Mgmt. Co. v. BP Prod. N. Am., Inc., 672 F.3d 476, 479 (7th Cir. 2012) (quoting Al's Serv. Ctr. v. BP Prods. N. Am., Inc., 599 F.3d 720, 727 (7th Cir. 2010) (alteration in original).  Here, Santana's state-law claims for battery, willful and wanton conduct, and indemnification have not been thoroughly briefed and have been treated by both parties as an afterthought to Santana's § 1983 claims.  Accordingly, the Court finds that the relevant factors to be considered, namely "judicial economy, convenience, fairness and comity," Lalowski v. City of Des Plaines, 789 F.3d 784, 794 (7th Cir. 2015) (quoting Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1251 (7th Cir. 1994)), do not militate strongly in favor of a federal decision of Santana's state-

law claims on the merits.  Pursuant to 28 U.S.C. § 1367(c)(3),

therefore, the Court declines to exercise supplemental jurisdiction

over Santana's remaining state law claims.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary

Judgment (d/e 17) is DENIED.  Defendants' Motion for Summary

Judgment (d/e 18) is GRANTED IN PART and DENIED IN PART.

Summary judgment is granted against Plaintiff and in favor of

Defendants Murfin and Mappin as to Count I of Plaintiff's

Complaint (d/e 1).  Counts II, III, and IV of Plaintiff's Complaint are

DISMISSED WITHOUT PREJUDICE for lack of subject-matter

jurisdiction.  The Clerk is DIRECTED to enter final judgment in

favor of Defendants Murfin and Mappin and against Plaintiff

Orlando Santana.  Any pending motions are DENIED as MOOT, any

pending deadlines are TERMINATED, and any scheduled settings

are VACATED.  This case is CLOSED.

**ENTERED: September 8, 2022**

**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**